923 F.2d 1045
 1991 A.M.C. 1032
 Thomas COOPER
v.
Irving W. LOPER; and Michael Loper, Third Party Plaintiffs,
v.
AXELSSON & JOHNSON, INC., Third Party Defendants.
Appeal of Irving W. LOPER and Michael Loper.
Thomas COOPER
v.
Irving W. LOPER; and Michael Loper, Third Party Plaintiffs,
v.
AXELSSON & JOHNSON, INC., Third Party Defendant.
Appeal of AXELSSON & JOHNSON, INC.
 Nos. 90-5373, 90-5374.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 13, 1990.
Decided Jan. 17, 1991.
 
 Michael D. Wilson (argued), William E. Bell, Kirlin, Campbell & Keating, Caldwell, N.J., for Irvin W. Loper and Michael Loper.
 William M. Honan, Daniel J. Saul (argued), Horn, Kaplan, Goldberg, Gorny & Daniels, P.C., Atlantic City, N.J., for Axelsson & Johnson, Inc.
 Before STAPLETON, HUTCHINSON, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Plaintiff Thomas Cooper was injured while off-loading a ship; after bringing this action, he received compensation in exchange for settling his claim against the shipowners. These cross-appeals arise from the efforts of the shipowners, third-party plaintiffs, Irving W. Loper and Michael Loper ("shipowners"), to secure indemnification or contribution from the dockowner, third-party defendant, Axelsson & Johnson, Inc. ("dockowner"). Both parties appeal from the district court's entry of final judgment after a bench trial of the third-party claims. The shipowners argue that the district court erred in awarding only 80% of the amounts paid by them in settlement and in refusing to award attorneys' fees. The dockowner argues that the district court lacked subject matter jurisdiction, that the case should have been tried to a jury, and that the district court's findings of fact are clearly erroneous. We hold that the district court had jurisdiction, that it could hear this case as a bench trial, and that its findings of fact are not clearly erroneous. We further hold, however, that full indemnity and attorneys' fees should have been awarded. Therefore, we will remand this case for entry of a judgment in accordance with this decision.
 
 I.
 
 2
 Cooper, an employee of the shipowners, was injured when he was hit with a large bucket of fish suspended from the boom of a shoreside crane. Cooper had been filling the bucket on the ship and then swinging it to dock employees on land. The district court found that the dock employees failed to catch the bucket and that it swung back to the ship, hitting Cooper who had bent down to clear fish and other debris from the deck around his feet.
 
 
 3
 Cooper brought this case under the Jones Act and "General Maritime Law" against the shipowners. The shipowners impleaded the dockowner pursuant to Rule 14(c) of the Federal Rules of Civil Procedure, demanding a judgment in favor of the plaintiff, as well as asserting their own claim for contribution or indemnity. After a jury was empaneled, but before trial, the shipowners settled with Cooper. The dockowner was given the opportunity to approve the settlement or assume defense of Cooper's claim against the shipowners.
 
 
 4
 After the settlement was announced, the judge proposed that he conduct a bench trial of the remaining claims against the dockowner. He conferred with counsel, and because there was ultimately no objection, he proceeded to trial. The judge determined that Cooper had been adequately compensated by the settlement and so made no award in Cooper's favor against the dockowner. He further concluded that the shipowners were not entitled to indemnification, but that they were entitled to contribution in the amount of 80% of their settlement together with prejudgment interest from the date of the settlement. Finally, the district court held that the shipowners were not entitled to recover from the dockowner any part of the attorneys' fees spent in defending against Cooper's claim. These cross-appeals followed.II.
 
 
 5
 The dockowner argues that the indemnity claim was not within the district court's admiralty jurisdiction and that therefore the district court lacked subject matter jurisdiction over that claim. It bases this argument on the requirement of Rule 9(h) of the Federal Rules of Civil Procedure[1] that, in certain cases, an admiralty claim must be specifically identified as such in the pleadings. Even assuming the dockowner is correct in asserting that the shipowners did not comply with Rule 9(h), this argument is without merit.
 
 
 6
 The dockowner's argument confuses admiralty as a source of procedural rules with admiralty as a basis for federal subject matter jurisdiction. Rule 9(h) states that when an alternate basis for federal jurisdiction exists, admiralty procedures will be followed only if the pleadings identify the admiralty claim as such. If a claim can only be brought as one in admiralty, there is no need to specify that admiralty procedures will be used. Nothing in Rule 9(h) speaks to subject matter jurisdiction.
 
 
 7
 Whether a particular claim is an admiralty claim for purposes of federal subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1333,[2] depends solely on the nature of the claim. A "stevedoring contract is a maritime contract" and a federal district court has jurisdiction over a claim for breach of such a contract under Section 1333. A & G Stevedores v. Elleman Lines, 369 U.S. 355, 359, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962). As we shall hereafter see, the shipowners' claim for indemnity under the doctrine of Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) is a claim for breach of a warranty implied in such a contract. As a result, Ryan 's indemnity claims have uniformly been regarded as admiralty claims. See, e.g., Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., 444 F.2d 727, 729 (3d Cir.1971) ("the shipowner instituted this action in admiralty, seeking indemnification [from the stevedore] for the damages awarded [to the injured employee]"). Hamburg-Amerika Linie v. Gulf Puerto Rico Lines, 579 F.2d 115, 118 (1 Cir.1978) ("[I]n a case such as this, where the claim is bottomed on indemnity for damages paid in an unseaworthiness action to a longshoreman hurt in the process of unloading cargo purportedly faultily stowed, the stevedoring contract, with its implied warranty of workmanlike performance, is of maritime nature and character.").
 
 
 8
 The dockowner cites cases in which indemnity claims have been tried to a jury as evidence that such claims are not necessarily within admiralty jurisdiction. See, e.g., Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). This also confuses admiralty procedure with admiralty subject matter jurisdiction; that non-admiralty procedure is applied does not demonstrate that the claim has ceased to be an admiralty claim. All of those cases involved at least one other claim that created a right to a jury trial; the indemnity claims were tried to the jury, not because the indemnity claim ceased to be an admiralty claim, but because there is no bar to trying an admiralty claim to a jury and conducting two separate trials in the same case "unduly complicates and confuses a trial, creates difficulties in applying the doctrines of res judicata and collateral estoppel, and can easily result in too much or too little recovery." Id. at 19, 83 S.Ct. at 1649. None of these cases demonstrates that federal courts lack subject matter jurisdiction over such claims.
 
 III.
 
 9
 The parties dispute whether the dockowner had a right to a jury trial on the indemnity claim. But even assuming that the dockowner was entitled to a jury trial, that right was waived by its participation without objection in the bench trial. In answer to the court's inquiry, "Doesn't the Waterman [S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960) ] case clearly bring this under admiralty?", counsel for the dockowner replied, "I think so, your Honor, yes sir." The court then continued "Therefore, all agreed that we won't need a jury or we shouldn't have a jury?" [counsel for shipowners, "Yes Sir."] "If there is any question I can do this, because I don't like to try cases over again, it is like watching a bad movie over again, if there is any doubt, I will let the jury be advisory only." Appendix at 162-63a. Counsel for the dockowner made no objection at any point.
 
 
 10
 Rule 39(a)(1) of the Federal Rules of Civil Procedure provides that once a timely demand is made for a jury trial, the parties may waive that right only if "[they] or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury[.]" However, all courts of appeals that have addressed the issue have established a general rule that "participation in a bench trial without objection constitutes waiver of the jury trial right." Royal American Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1018 (2d Cir.1989) (collecting cases).[3]
 
 
 11
 The facts in this case closely resemble those in Molett v. Penrod Drilling Co., 826 F.2d 1419 (5th Cir.1987), vacated on other grounds, 872 F.2d 1221 (5th Cir.), cert. denied sub nom. Columbus-McKinnon, Inc. v. Gearench, Inc., --- U.S. ----, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). There, the main action settled--after a trial to the jury, but before the verdict was announced--and the third-party defendants failed to object to the judge's announcement that he would determine the merits of the third-party action. The court of appeals concluded that the third-party defendant had waived any jury trial, noting that,
 
 
 12
 [Third-party defendant's] silence on the matter at trial and until now certainly suggested to the trial court and opposing parties that it acquiesced in the court's proposed plan. [It] may not now deny that it waived its right to a jury trial and demand a new trial only after it has lost on the merits and failed to make a timely objection before the district court.
 
 
 13
 Molett, 826 F.2d at 1424. We similarly find that the dockowner may not wait until after it has lost on the merits to assert its alleged right to a jury trial and that therefore its failure to object to the bench trial at any time prior to this appeal waived any such right it may have had.
 
 IV.
 
 14
 The dockowner challenges four of the district court's findings of fact: that the dock's employees performed negligently, that Cooper was not contributorily negligent, that the $200,000 settlement was reasonable, and that Captain Loper, one of the shipowners, was not in control of the unloading operation.[4] We review findings of fact only to determine if they are clearly erroneous. Bell v. United Princeton Properties, Inc., 884 F.2d 713, 718 (3d Cir.1989). We find no clear error in any of the findings.
 
 
 15
 In challenging the finding that its employees were negligent, the dockowner relies on the testimony of its expert that, once pushed up to the dock, the bucket would not have swung back as far as Cooper. It points, as well, to the testimony of the dock employees that they had never seen a bucket swing back in that manner. However, Cooper offered testimony tending to show that the bucket did swing back as he contended, and the district court was free to choose among the versions offered to it. The dockowner also stresses that no one actually saw the dock employees fail to catch the bucket. In the absence of any direct evidence, however, the district court was entitled to draw its own conclusion about the accident's cause from the available circumstantial evidence, and the record does not show that its conclusion here was clearly erroneous.
 
 
 16
 Similarly, the dockowner speculates that Cooper could have caused the accident by standing on the tag line. But no evidence indicates that Cooper did that. The dockowner's only other claim of contributory negligence is that Cooper should have prevented the accident by paying more attention. The district court reasonably concluded, however, that Cooper had a right to rely on the dock employees to either catch the bucket or warn him that they had missed.
 
 
 17
 The dockowner next challenges the reasonableness of the settlement, claiming that Cooper's future earnings were overestimated because Cooper had an uneven employment history and his seasickness might have prevented him from continuing as a fisherman. The economist who testified about Cooper's future earnings based his calculations on the salary that Cooper had actually earned as a fisherman during the year before the accident and the first portion of the year in which the accident occurred. When cross-examined about why he did not take Cooper's erratic employment into account, the economist responded that Cooper had worked very hard as a gas station attendant for at least a portion of the time since the accident and that Cooper would have been more likely to have continued full time employment as he matured. Thus, the evidence about Cooper's future earnings provided a rational basis for the district court's conclusion that the settlement was reasonable.[5]
 
 
 18
 Finally, the dockowner challenges the finding that the ship's captain did not have control of the unloading. It points to the captain's testimony that one of the men "was definitely not intoxicated enough where I would take him from the job or ask the foreman to take him from the job ...[.]" Appendix at 342a. But, Captain Loper also testified that he did not have authority over the dock's employees and that it was "more or less the foreman's authority" to tell dock employees not to drink. Appendix at 328a. Thus, the district court's finding that the dockowner had control of the unloading was not lacking in evidentiary support.
 
 V.
 
 19
 Under a judicially created doctrine, first enunciated in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), stevedores and other contractors give shipowners an implicit warranty that their services will be performed in a "workmanlike" manner. In the landmark Ryan case, a longshoreman was injured on board ship when a 3200 pound roll of pulp board broke loose because the loading stevedore had not properly secured it. The shipowner was found liable for the longshoreman's injuries. However, the Supreme Court held that a stevedore's contract with a shipowner includes an implied "warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product[,]" id. at 134, 76 S.Ct. at 237, and that because the stevedore breached this warranty, it must indemnify the shipowner for its liability to the injured longshoreman.
 
 
 20
 A stevedore does not impliedly contract to provide indemnity under all circumstances, however. If a stevedore can prove that the shipowner's conduct prevented or seriously impeded the stevedore from performing in a workmanlike manner, then indemnity will be denied. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 440, 2 L.Ed.2d 491 (1958); Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., 444 F.2d 727, 733 (3d Cir.1971).
 
 
 21
 Because Ryan indemnity rests on the theory that the stevedore has an implied contractual duty to render workmanlike service, tort principles of contribution do not apply. Italia Societa Per Azioni Di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 321, 84 S.Ct. 748, 752, 11 L.Ed.2d 732 (1964). Indemnity actions are not resolved by apportionment of fault:
 
 
 22
 The Ryan doctrine is not, however, a precision instrument for allocating the burden according to the relative amounts of fault, but a rough all-or-nothing device. Even where the shipowner and the contractor are both at fault, under the Ryan warranty doctrine indemnity will be allowed wholly or not at all ...
 
 
 23
 Parfait v. Jahncke Service, Inc., 484 F.2d 296, 302 (5th Cir.1973); Dobbins v. Crain Bros., Inc., 567 F.2d 559 (3d Cir.1977) (reversing lower court's 75%-25% apportionment of damages); Gilchrist v. Mitsui Sempaku K.K., 405 F.2d 763, 768 (3d Cir.1968) ("The law of indemnity is not concerned with comparison or degree of fault of the shipowner and the [stevedore]."), cert. denied sub nom. Jarka Corp. v. Mitsui Sempaku K.K., 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969).
 
 
 24
 Applying these principles to the district court's findings of facts in this case, we conclude that the court erred in only awarding the shipowners 80% contribution. Because the court found that the dockowner breached its duty of workmanlike service through the conduct of its employees, it should have awarded the shipowners full indemnity. Although the court also found that the boat's slippery deck contributed to the accident, the deck in no way prevented the dockowner from fulfilling his warranty. Thus, the condition of the deck was not the sort of active interference "sufficient to preclude [the shipowner's] recovery." Weyerhaeuser, 355 U.S. at 567, 78 S.Ct. at 441. Accordingly, the shipowners should be granted full indemnity from the dockowner, including prejudgment interest from the date of the settlement.[6]
 
 VI.
 
 25
 The district court erred in not awarding the shipowners their legal expenses for defending against Cooper's claim.[7] As this court has held,
 
 
 26
 It ... appears that in creating the shipowner's right to sue for indemnification, the [Supreme] Court contemplated that the shipowner's litigation expenses would be part of the damages. This view is consistent with the ordinary law of indemnification, and has been adopted repeatedly in decisions of this court and other circuits subsequent to Ryan.
 
 
 27
 Burris v. Global Bulk Carriers, Inc., 505 F.2d 1173, 1175 (3d Cir.1974) (citations omitted); see also Guarrancino v. Luckenbach S.S. Co., 333 F.2d 646, 648 (2d Cir.), cert. denied, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964). This court has limited attorneys' fees in at least one other case, Gilchrist, supra, but that case was a departure from the general rule, involving unusual facts not present here.[8]
 
 VII.
 
 28
 The district court had subject matter jurisdiction in this case. By participating in a bench trial without objection, the dockowner waived any right it might have had to a jury trial. None of the district court's findings of fact was clearly erroneous. However, it misapplied the law in failing to award the shipowners full indemnity including attorneys' fees for defending against Cooper's claims and prejudgment interest from the date of the settlement. Accordingly, we will reverse the judgment of the district court and remand this case to the district court for the entry of a judgment consistent with this opinion.
 
 
 
 [1]
 Rule 9(h) states in relevant part, "A pleading or a count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for [procedural purposes]. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not."
 
 
 [2]
 28 U.S.C. Sec. 1333 states in relevant part, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."
 
 
 [3]
 The few precedents to the contrary have been limited or overruled. See White v. McGinnis, 903 F.2d 699, 702 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990) (overruling as "rigid" and "formalistic" Palmer v. United States, 652 F.2d 893 (9th Cir.1981)). See also Royal American Managers, 885 F.2d at 1018-19; United States v. 1966 Beechcraft Aircraft Model King Air, 777 F.2d 947, 951 (4th Cir.1985)
 
 
 [4]
 The shipowners challenge the district court's finding that the dock was slippery. However, we need not reach that issue because even assuming that the dock was slippery, that condition does not effect the distribution of liability between the parties
 
 
 [5]
 Because we find that the settlement itself was reasonable, we need not reach the issue of whether the shipowners properly tendered the defense of this action to the dockowner and what effect such a tender would have
 
 
 [6]
 "The rule in admiralty is that prejudgment interest should be awarded unless there are exceptional circumstances that would make such an award inequitable." In re Bankers Trust Co., 658 F.2d 103, 108 (3d Cir.1981), cert. denied sub nom. Bankers Trust Co. v. BP Oil, Inc., 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982) cited with approval in Bermuda Express, N.V. v. M/V Litsa, 872 F.2d 554, 564 (3d Cir.), cert. denied sub nom. M/V Litsa v. Southeastern Maritime Co., --- U.S. ----, 110 S.Ct. 73, 107 L.Ed.2d 40 (1989). Because prejudgment interest compensates the indemnified party for the use of its money between settlement and reimbursement, interest accrues from the settlement date
 
 
 [7]
 Because the attorneys' fees are awarded on the theory that the indemnified party bore a burden belonging to the indemnifier, only attorneys' fees related to the defense of the main action are awarded, not the fees incurred in obtaining indemnification. Burris, 505 F.2d at 1178 n. 8; Simko v. C & C Marine Maintenance Co., 594 F.2d 960, 969 (3d Cir.), cert denied, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979)
 
 
 [8]
 Burris found Gilchrist limitation of fees to be the result of "the extraordinary circumstances of that case"--in which there had been extreme delays and entire separate proceedings on fees--and noted that "[t]he only cases which have followed Gilchrist have similarly involved exceptional circumstances which required the courts to create an 'equitable modification of the normal rule of indemnification.' " 505 F.2d at 1176